FILED BY ____ D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE    05 JUL -8 PM 4: 03
WESTERN DIVISION

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | | |
|---|---|---|
| ERICSON GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.   04-2033 MlV |
| | ) | |
| MARDI GRAS ZONE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| MARDI GRAS ZONE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ERICSON GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL

Before the court is the June 15, 2005 motion of the plaintiff, Ericson Group, Inc. ("Ericson"), to compel the defendant, Mardi Gras Zone, LLC ("Mardi Gras"), to respond to Request for Production No. 5 that was included in Ericson's discovery requests that were sent to Mardi Gras on March 28, 2005.  This motion has been referred to the United States Magistrate Judge for determination. For the following reasons, the motion is granted.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on __7-11-05__

39

## BACKGROUND

These consolidated suits arise out of a purchase contract agreement between Ericson and Mardi Gras for the purchase and delivery of a fixed amount of custom made Mardi Gras style beads. Ericson's suit is based upon the allegations that it lost an exclusive contract with several of Harrah's Entertainment Corporation properties and other Harrah's properties severely curtailed their business with Ericson because the products it purchased from Mardi Gras and later sold to Harrah's were defective. Mardi Gras is suing Ericson on an open account for the beads it delivered to Ericson for which it claims Ericson has failed to pay.

These two suits were consolidated by order of the court on December 8, 2004. The present motion involves a discovery dispute between the parties.

## CONTENTIONS OF THE PARTIES

On March 28, 2005, Ericson sent its third request for production of documents to Mardi Gras. Request No. 5 stated as follows:

> REQUEST FOR PRODUCTION NO. 5: Please produce a copy of all documents dealing with Mardi Gras Zone, Inc.'s ("MGZ") purchase of the beads from their overseas supplier including but not limited to:
>
> a. Quote(s) from MGZ's overseas Factory;
> b. Purchase order(s) from MGZ to overseas Factory;

2

    c. Change order(s) from MGZ to overseas Factory;
    d. Production order(s) from MGZ to overseas Factory;
    e. Shipping documents for each bead shipment from
       overseas Factory;
    f. Invoice(s) from overseas Factory to MGZ;
    g. All invoices dealing with "Bead Mold" charges,
       designs, and design changes;
    h. All memos, faxes, emails, notes, etc. dealing with
       MGZ's purchase of the beads from their overseas
       supplier(s).

Mardi Gras did not respond to this request. Later, on May 2, 2005, Mardi Gras objected to the request on the grounds that these records were not relevant to the issues present in the case.

Subsequent to Mardi Gras's objection, a conversation took place between counsel for the parties. During that conversation, Mardi Gras clarified that it was no longer suing Ericson in regard to any of the undelivered beads. Ericson concedes that it agreed at that time that the documents sought in Request No. 5 need not be produced.

In light of more recent discussions with Mardi Gras, however, Ericson now contends that the documents should be produced. According to Ericson, it learned during meetings held in June of 2005 that Mardi Gras intended to argue that the beads it delivered to Ericson were not defective and were standard within the industry. Ericson believes that there is a "possibility that there might be information within the communications between Mardi Gras Zone and the Chinese factory" that would disprove Mardi Gras'

assertion that the beads were not defective. (Pla.'s Motion to Compel at 2.)

As support for its contention that the information requested is relevant, Ericson alleges that it learned through email correspondence with Mardi Gras' counsel that the overseas factory had agreed not to charge Mardi Gras for some of the beads it had sold to Mardi Gras. Ericson maintains that this information conflicts with Mardi Gras' position that the beads were not defective and raises doubts as to whether the beads it received from Mardi Gras were in proper form.

Mardi Gras' objection to the request at issue is as follows:

RESPONSE: Mardi Gras Zone objects to the production of documents requested on the ground that Mardi Gras Zone is suing Ericson Group on an open account based on a contractual relationship at a price that was quoted and agreed upon by the parties. The documents requested are irrelevant and will not lead to the discovery of admissible evidence as the prices paid by "MGZ to the overseas factory" are neither admissible in connection with the plaintiff's claims on an open account nor in connection with any defense of Ericson Group. This objection applies to all the items requested in subparagraphs a, b, c, d, e, f and h. With respect to subparagraph g, Mardi Gras has no invoices.

Mardi Gras contends that discovery that has taken place thus far shows without a doubt that contrary to Ericson's claims that Harrah's terminated the existing contract between the two corporations, Ericson voluntarily terminated its contract with Harrah's at the end of February 2004 in a letter dated January 19,

4

2004. (Def.'s Resp. in Opposition to Pla.'s Motion to Compel, Ex. A.)   In this letter, Ericson does not mention that the alleged defective beads it purchased from Mardi Gras and then re-sold to Harrah's was the reason for its termination of the contract.  Mardi Gras claims that Ericson's voluntary termination of its contract with Harrah's demonstrates definitively that Ericson's requests for documents that at are issue in this motion are irrelevant.

Mardi Gras further contends that the documents sought by Ericson are not relevant to any of the claims made by either party in this case and that Ericson has made no showing that the documents are relevant.  Mardi Gras claims that the only issues relevant in this case are the parties' terms of purchase, the payments made by the parties, and the credits given.  Thus, according to Mardi Gras, the terms of its purchase of the beads from its supplier are irrelevant.

## ANALYSIS

Rule 26 of the Federal Rules of Civil Procedure states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ."  Fed. R. Civ. P. 26(b)(1).  Relevancy for discovery purposes is extremely broad.  The information sought need not be admissible in court in order to be relevant.  Rather, the relevancy burden is met if the party can show that the information sought

5

"appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). Nevertheless, discovery does have "'ultimate and necessary boundaries,'" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)), and "'it is well established that the scope of discovery is within the sound discretion of the trial court.'" *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994) (quoting *United States v. Guy*, 978 F.2d 934, 938 (6th Cir. 1992)).

In order for Ericson to prevail on its claim that Mardi Gras' products caused Harrah's to refuse to do further business with Ericson, Ericson must rebut Mardi Gras' allegations that the beads were not defective. Mardi Gras does not deny that it intends to argue that the beads sold to Ericson were not defective. Thus, Ericson is entitled to any discovery which may show that the beads were in fact defective. Correspondence between counsel for the parties suggests that the overseas manufacturer did not receive compensation for some of the beads it delivered to Mardi Gras. This certainly raises a suspicion that there may have been something wrong with the beads. Furthermore, Mardi Gras has provided no explanation for why the overseas factory did not charge it for a portion of the beads.

Therefore, the court finds that Ericson should be entitled to

6

discovery of the records set forth in Request No. 5 as the information sought appears reasonably calculated to lead to the discovery of admissible evidence. Any fear that Mardi Gras may have that Ericson will use the information to deal directly with the overseas manufacturer is unsubstantiated in light of the protective order in place in this case that makes any documents, answers to interrogatories, testimony, and other responses that contain trade secrets or other confidential research, development, or commercial information off limits to the parties and only visible by officers of the court and attorneys for the parties.

## CONCLUSION

Accordingly, Mardi Gras is ordered to produce documents in response to Ericson's Request for Production No. 5 within eleven (11) days from the date of this order. Mardi Gras is also directed to comply with the protective order in order to maintain the confidentiality of the documents that it has been ordered to produce.

IT IS SO ORDERED this 8th day of July, 2005.

DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

7

# UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 39 in case 2:04-CV-02033 was distributed by fax, mail, or direct printing on July 11, 2005 to the parties listed.

---

Oscar C. Carr
GLANKLER BROWN, PLLC
One Commerce Square
Suite 1700
Memphis, TN 38103

William F. Wessel
WESSEL & ASSOCIATES
127 Camp Street
New Orleans, LA 70130

John McQuiston
STOKES BARTHOLOMEW EVANS & PETREE, P.A.
1000 Ridgeway Loop Rd.
Ste. 200
Memphis, TN 38120

William Alexander Porteous
PORTEOUS HAINKEL & JOHNSON
704 Carondelet St.
New Orleans, LA 70130--377

Honorable Jon McCalla
US DISTRICT COURT